UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRENDA ANDINO,

              Plaintiff,

-vs-                                   Case No.  6:11-cv-58-Orl-19GJK

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.
_____

# REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT:

## I.    <u>BACKGROUND</u>

In 2007, Claimant, Brenda Andino, filed an application for social security supplemental security income (hereafter "Application").  R. 103-09.[1]  In the Application, Claimant states she was born on February 25, 1971, has four children and became disabled on February 13, 2003.  R. 103-04.  On November 14, 2007, Defendant denied the Application.  R. 58-60.  Claimant's request for reconsideration was denied on March 27, 2008.  R. 61-64.  On April 7, 2008, Claimant requested a hearing before an Administrative Law Judge (hereafter "ALJ").  R. 70.  On November 3, 2009, a hearing was held before ALJ Charles R. Howard, at which Claimant and Robert Bradley, a vocational expert, testified.  R. 39-54.  On November 20, 2009, the ALJ issued

---

[1]  The parties do not agree on the date Claimant filed her Application.  The ALJ and Commissioner indicate that Claimant filed her Application on July 13, 2007.  R. 22; Doc. No. 20 at 1.  Claimant indicates she filed her Application on August 6, 2007.  Doc. No. 16 at 2.  There is record evidence supporting both dates.  *See* R. 55-56, 103-09.

his decision, denying the Application after finding Claimant is not disabled.  R. 22-33.  On January 19, 2010, Claimant requested a review of the ALJ's decision, asserting the ALJ did not apply the correct legal standards and attached "new and material" evidence to be considered by the Appeals Council.  R. 8-14.  On December 13, 2010, the Appeals Council denied Claimant's request for review.  R. 1-4.  On January 13, 2011, Claimant appealed the decision by timely filing her Complaint.  Doc. No. 1.

Claimant raises five issues on appeal:  1)  The ALJ lacked good cause to give little weight to Dr. Kohen's opinion regarding fibromyalgia and to reject the diagnosis; 2) The ALJ did not apply the correct legal standard to Claimant's pain testimony; 3) The ALJ did not apply the correct legal standard to Claimant's medication side effects; 4) The ALJ's finding that Claimant is not disabled is not supported by substantial evidence and is based on the incorrect legal standard; and 5) The Appeals Council did not apply the correct legal standard to new and material evidence.  Doc. No. 16 at 2.  Claimant requests this Court reverse the ALJ's decision and remand for an award of benefits.  Doc. No. 16 at 2.  For the reasons discussed more fully below, it is recommended that the Commissioner's decision be **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) because the ALJ lacked good cause to give little weight to Dr. Kohen's opinion regarding fibromyalgia and to reject the diagnosis. Thus, the final decision is not supported by substantial evidence**.

## II.    MEDICAL AND OPINION EVIDENCE

Because the Court finds the first issue dispositive of the case, the Court tailors the medical and administrative background to that issue.

On August 3, 2007, Claimant began treating with Dr. Michael D. Kohen on referral from

Claimant's other treating physician, Dr. Mercedes Garrido. R. 320. Dr. Kohen's notes show that Claimant had a "three-year history of a great deal of pain which is increasing. . . ." R. 320. Physical examination revealed that her "spine, joints, and muscles were diffusely tender with many tender points." R. 320. Claimant demonstrated good range of motion, but decreased strength. R. 320. Dr. Kohen's initial medical impression was that Claimant had a history of lupus. R. 320. Dr. Kohen prescribed Plaquenil, ordered laboratory studies and asked Claimant to return for a follow-up in two months. R. 320.

On October 5, 2007, Dr. Marc Harr completed an orthopaedic consultation of Claimant. R. 191. Dr. Harr noted that Claimant "complains of severe pain in the low back area radiating down the posterior right lower extremity, which is accompanied by numbness and paresthesias. She has had extensive treatment in the past including, most recently, pain medications and muscle relaxants." R. 191. Dr. Harr reviewed an MRI of Claimant's spine, noting that it reveals a herniated disc at L5-S1. R. 191. Dr. Harr opined that Claimant would be a candidate for surgical intervention, but that she was not interested in surgery at that time. R. 192. Dr. Harr discussed pain management options which included epidural steroid injections and selective nerve root type injections that would be provided by a pain management clinic. R. 192.

On October 29, 2007, Dr. Kohen reported that Claimant "has pain in the fingers, toes, and ankles with some ankle swelling. She has moderate morning stiffness for 30 minutes." R. 355. Dr. Kohen further reported that Claimant's "forearms hurt. She sleeps poorly. She can walk 20 minutes. She has some stomach upset. She has no respiratory complaints." R. 355. Dr. Kohen examined Claimant and found that "her skin was clear. No nodules were noted. Neurological examination and gait were intact. Her spine, joints, and muscles were diffusely tender with

many tender points. She had decreased strength, but good motion." R. 355. Dr. Kohen diagnosed Claimant with fibromyalgia syndrome. R. 355.

On November 8, 2007, Dr. Faith Harvey, a non-examining medical consultant, reviewed Dr. Kohen's August 8, 2007, treatment note and opined that Claimant could occasionally lift fifty (50) pounds, frequently lift twenty-five (25) pounds, stand/walk about six (6) hours in an eight (8) hour day, sit for six (6) hours in an eight (8) hour workday and had no limitations in pushing or pulling, no postural limitations, no manipulative limitations, no visual limitations, and no communicative limitations. Doc. No. 343. Dr. Harvey did not have the benefit of Dr. Kohen's October 29, 2007 fibromyalgia diagnosis.

On November 12, 2007, Claimant was examined by Dr. Ralph J. Zwolinski, a neurologist. R. 350. Dr. Zwolinski indicates that Claimant expressed a "lack of understanding as to exactly why she is here." R. 350. Dr. Zwolinski further indicates that Claimant "was diagnosed with lupus and sees rheumatology for this. She does have some headaches and I thinking [sic] that this may be the reason why she is here." R. 350. After performing a "Neurological Review," Dr. Zwolinski found Claimant was "significant" for lupus and a history of headaches. R. 350. Dr. Zwolinski found Claimant did not have any gait problems, disorders of her special senses, memory problems, or bowel and bladder difficulties. R. 350. Dr. Zwolinski's examination was generally normal, except that he noted Claimant has "some discomfort to palpation of the lumbar paraspinals and sacroiliac joints bilaterally. She has a positive lumbar hyperextension test. She has a negligibly positive straight leg raising test." R. 350. Dr. Zwolinski ordered an imaging study of the brain and prescribed Neurontin. R. 351. On November 15, 2007, Dr. James W. Weaver sent Dr. Zwolinski a letter indicating that his review

of Claimant's brain MRI was normal.  R. 352-53.  There are no other treatment notes from Dr. Zwolinski in the record.

On March 4, 2008, Dr. Kohen's treatment note shows that Claimant reported "pain with swelling in the knees, ankles, and metatarsal phalangeal joints.  She is tired in the morning for 15 minutes."  R. 395.  Dr. Kohen also wrote that Claimant complains of bruising upon being touched, is having more hair loss, has intermittent stomach pain, sleeps poorly even with her medications, but has no respiratory complaints.  R. 395.  Dr. Kohen's physical examination revealed clear skin, no nodules, "[n]eurological examination and gait were intact.  Her spine, joints, and muscles were diffusely tender with many tender points.  She had good motion, but decreased strength."  R. 395.  Dr. Kohen's impression was that Claimant's lupus appears to be in remission and she had fibromyalgia syndrome.  R. 395.

On March 24, 2008, Dr. Eric Puestow, a non-examining medical consultant, completed a "Physical Residual Functional Capacity Assessment."  R. 380.  Dr. Puestow provided a primary diagnosis of fibromyalgia and a secondary diagnosis of "possible connective tissue disease."  R. 380.  Dr. Puestow found Claimant had the following exertional limitations:  could occasionally lift or carry fifty pounds, could frequently lift or carry twenty-five pounds, could sit, stand or walk six hours in an eight-hour workday and her ability to push and pull was unlimited within her lifting and carrying restrictions.  R. 381.  To support these findings, Dr. Puestow stated:

> [Claimant] alleges back and leg problems fatigue, and possible lupus.  She was seen by Rheumatology 08/08 and 10/29/07.  The general exam, neuro exam, and gait were normal.  Spine, muscles, and joints were tender but with GROM.  She was diagnosed with fibromyalgia and with lupus by history.  Neuro eval 12/12/07 demonstrated normal M/S/R/C.  Brain MRI was also normal. 7/06/07 LS MRI showed a disc bulge at L5-S1 with no canal or foraminal stenosis.

R. 381 (emphasis added).[2]  Dr. Puestow ultimately concluded that the "[a]llegations exceed findings.  RFC is in accord with the data."  R. 385.[3]

On September 5, 2008, Dr. Kohen wrote that Claimant reported being tired in the morning for about fifteen minutes; has pain with swelling in her ankles, wrists and fingers; sleeps poorly with insomnia; occasionally has burning in her abdomen; can walk ten minutes, but then has pain and becomes tired; and has no respiratory complaints.  R. 391.  Dr. Kohen's physical examination revealed a "few, flat, irregular, dark areas of her trunk and extremities.  No nodules were noted.  Neurological examination and gait were intact.  Her spine was tender from L1 to the sacroiliac joints.  Her peripheral joints were not tender.  She had good motion and strength."  R. 391.  Dr. Kohen's impressions were fibromyalgia syndrome and lupus in remission.  R. 391.

On May 5, 2009, Dr. Kohen completed a "Fibromyalgia Residual Functional Capacity Questionnaire."  R. 432.  Dr. Kohen stated that he treated Claimant every three months since August 3, 2007.  R. 432.  Dr. Kohen identified the following clinical and laboratory findings supporting a diagnosis of fibromyalgia: positive ANA test of 1:280 on December 12, 2008; and low WBC test on December 12, 2008.  R. 432.  Dr. Kohen stated that Claimant suffers from the following symptoms:  multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, Temporomandibular Joint Dysfunction ("TMJ"), Raynaud's phenomenon, anxiety, panic attacks, depression, numbness and tingling, frequent, severe headaches and chronic fatigue syndrome.  R. 432.  Dr. Kohen also indicated that Claimant suffered pain in her chest and spine, as well as bilateral pain in her shoulders, arms,

_____

[2] The dates cited by Dr. Puestow where Claimant was seen by a rheumatologist correspond to days when Dr. Kohen treated Claimant.  R. 355-56.

hands/fingers, hips, legs and knees/ankles/feet. R. 433. Dr. Kohen reported that Claimant is not a malingerer. R. 433. Dr. Kohen stated that Claimant's daily pain, ranging from "mod to severe," is severe enough to "constantly" interfere with the attention and concentration necessary to perform simple work tasks. R. 433. Dr. Kohen noted that Claimant's side effects from her medications include "dizziness, dry mouth, stomach upset, [and] drowsiness." R. 433. Thus, Dr. Kohen opined that Claimant was incapable of performing even low stress jobs. R. 433.

In regards to Claimant's functional limitations, Dr. Kohen indicated that Claimant could only sit fifteen minutes at a time, stand ten minutes at a time and sit or stand/walk less than two hours in a normal eight-hour workday with normal breaks. R. 434. Dr. Kohen indicated that during a normal eight-hour workday that Claimant would need to walk around for five minutes every fifteen minutes. R. 434. Dr. Kohen indicated that Claimant requires a job that "permits shifting positions *at will* from sitting, standing or walking." R. 434. Dr. Kohen also indicated that Claimant would need to take a thirty minute unscheduled break every fifteen to twenty minutes during a normal eight-hour workday. R. 434. Dr. Kohen further indicated that Claimant should never lift and carry ten pounds or more, only rarely lift and carry less than ten pounds, can never look down, can occasionally look up, left or right and could frequently hold her head in a static position. R. 435. Dr. Kohen indicated that Claimant had significant limitations in reaching, handling and fingering and estimated that Claimant would miss more than four days of work per month as a result of her impairments. R. 435.

On May 11, 2009, Dr. Kohen's treatment note shows that Claimant reports "pain in the low back and thighs with fatigue. She has 20 minutes of mild to moderate morning stiffness." R. 482. Dr. Kohen noted that Claimant sleeps poorly, Neurontin does not help and a "form for

disability was filled out for her." R. 482. Dr. Kohen's physical examination revealed "neck was supple without lymphadenopathy or masses. Neurological examination and gait were intact. Her spine, joints, and muscles were diffusely tender with many tender points. She has good motion, but decreased strength and many tender points." R. 482. Dr. Kohen's impression was fibromyalgia syndrome, lupus in remission, allergy and radiculopathy down her leg. R. 482.

On October 16, 2009, Dr. Mercedes Garrido, Claimant's treating physician who referred Claimant to Dr Kohen, filled out a form stating that Claimant's diagnoses are fibromyalgia, lupus and leucopenia. R. 436. Dr. Garrido opines that Claimant cannot work sitting down or standing up. R. 436. Dr. Garrido states that Claimant's condition is permanent and she is unable to work, cannot volunteer or attend school. R. 436.[4]

On February 2, 2010, Dr. Kohen offered another opinion by completing a "Fibromyalgia Residual Functional Capacity Questionnaire." R. 486. Dr. Kohen indicates that Claimant is unable to frequently lift or carry ten pounds due to pain secondary to her lupus. R. 486. Dr. Kohen indicates that Claimant cannot sit in a chair for four hours or stand on her feet for two or more hours in an eight-hour workday due to pain secondary to her lupus and her broad based disc bulge at L5-S1. R. 486. Dr. Kohen also indicates that Claimant's "[p]erceived increased symptoms" would result in her being absent from work more than four days per month; the side effects from pain and medication prevented Claimant from "concentrating even two hours at a time;" and Claimant is unable to "perform any activity eight hours per day five days per week on a reliable and sustained basis." R. 486. Dr. Kohen opines that "[b]ased upon a review of the medical records, the patient history provided by [Claimant] and the level of severity of the

_____

[4] The record contains some treatment notes from Dr. Garrido, but they are handwritten and illegible. R. 406, 408-415, 425, 483-85.

impairments which were diagnosed upon examination, . . . [Claimant's] impairments and limitations have existed since . . . February 13, 2003." R. 486.

## III.   <u>ALJ'S DECISION</u>

On November 3, 2009, a hearing was held before the ALJ, wherein Claimant and a vocational expert testified. R. 39-40. On November 20, 2009, the ALJ issued a decision denying Claimant's Application. R. 22-33. The ALJ made the following significant findings:

1. Claimant has not "engaged in substantial gainful activity since July 13, 2007, the application date." R. 24.

2. Claimant has the following severe impairments: broad based disc bulge at L5-S1; lupus, in remission, leukopenia; and, major depressive disorder, recurrent. R. 24.

3. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 27.

4. Claimant has the "residual functional capacity to perform a range of light work:" Claimant can occasionally "lift/carry" twenty (20) pounds and can frequently "lift/carry" ten (10) pounds or less; Claimant can sit and "stand/walk" for six hours in an eight-hour workday; Claimant can "perform push/pull functions with her extremities;" Claimant can climb, balance, stoop, kneel, crouch or crawl; Claimant can perform simple, routine, repetitive tasks and can maintain concentration and persistence in performing these tasks; Claimant can understand, remember and carry out simple instructions; Claimant can appropriately respond to "supervision, co-workers and usual work situations;" Claimant can adapt to "gradual and infrequent

changes in the work setting;" and Claimant is not able to perform work assignments that require speaking or reading English.  R. 28.

5. Claimant cannot perform her past relevant work.  R. 31.

6. Claimant's date of birth is February 25, 1971, and she was thirty-six (36) years old at the time she filed her Application.  R. 31.

7. Claimant has limited education and cannot communicate in English.  R. 31.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. R. 31.

9. Considering Claimant's age, education, work experience and residual functional capacity, there are jobs in the national economy, that exist in significant numbers, that Claimant can perform.  R. 32.

10. Claimant has not been under a disability, as defined in the Social Security Act, from July 13, 2007, the date of the Application.  R. 33.

In his decision, the ALJ specifically rejected Dr. Kohen's diagnosis of fibromyalgia and his opinion regarding the resulting functional limitations therefrom.  R. 24, 26, 30.  At step-two of the sequential evaluation process, the ALJ states:

> Dr. Kohen diagnosed fibromyalgia on 10/29/07, following a brief examination that revealed "On physical examination, her skin was clear.  No nodules were noted.  Neurological examination and gait were intact.  Her spine, joints, and muscles were diffusely tender with many tender points.  She had decreased strength, but good motion."  The undersigned rejects this casual diagnosis of fibromyalgia, as it is based solely on diffuse tender points without specific identification of the actual trigger points commonly

associated with fibromyalgia.

R. 24.  Thus, the ALJ rejected Dr. Kohen's fibromyalgia diagnosis because he did not provide "specific identification of the actual trigger points commonly associated with fibromyalgia." R. 24.[5]

At step-two, the ALJ also characterizes other treatment records from Dr. Kohen as follows:

> On 3/4/08, the Claimant complained to Dr. Kohen of pain with swelling in the knees, ankles and feet.  She said she was tired, bruised easily and had additional hair loss, as well.  "On physical examination, her skin was clear.  No nodules were noted.  Neurological examination and gait were intact.  Her spine, joints, and muscles were diffusely tender with many tender points.  She had good motion, but decreased strength."  Again, she had a relatively normal exam, with insufficient evidence to support a diagnosis of fibromyalgia. . . .

> On 9/5/08, Dr. Kohen noted that the [C]laimant had scattered, varying-sized, dark, painless areas on her skin, swelling in her ankles, wrists and fingers. . . . "Neurological examination and gait were intact.  Her spine was tender from L1 to sacroiliac joints.  Her peripheral joints were not tender.  She had good motion and strength.  This exam was negative for joint tenderness. . . .

> On 5/5/09, Dr. Kohen responded to the [C]laimant's attorney's request to complete form "Fibromyalgia Residual Functional Capacity".  Dr. Kohen stated that he had seen the [C]laimant every 3 months since 8/3/07 and the earliest description appeared of record 2004. He stated she also had lupus erythomatosus.  He indicated numerous symptoms and medical, including that the [C]laimant had multiple tender points.  In essence, Dr. Kohen opined that the [C]laimant had the residual functional capacity for less than a full range of sedentary work. . . .

> On 5/11/09, Dr. Kohen saw the [C]laimant on follow-up and noted she complained of back and thigh pain, with fatigue, poor sleep, as well as morning stiffness.  His exam again disclosed that she was neurologically intact, as was her gait.  There was diffuse tender

---

[5] The ALJ does not elaborate as to which trigger points are commonly associated with fibromyalgia.  R. 24.

> points, but she had good motion. Dr. Kohen's diagnosed [sic]
> included fibromyalgia syndrome, lupus in remission and
> radiculopathy down the leg. She was given Plaquenil, a lumbar
> support and told to return in 3 months.

R. 25-26 (emphasis added). Thus, at step-two, the ALJ reviewed Dr. Kohen's treatment records

and opinion that Claimant's residual functional capacity precludes sedentary work.

Regarding Dr. Kohen's residual functional capacity opinion that Claimant is unable to

perform sedentary work, the ALJ assigns that opinion "little weight," stating:

> it is inconsistent with his records, inconsistent with the medical
> record and is not supported by expert medical evidence. Dr.
> Kohen's examinations appear to have been rather casual. He failed
> to specifically identify specific trigger points, which is essential to
> a diagnosed [sic] of fibromyalgia. His exams state only that there
> were diffusely tender muscles and tender joints. <u>His most recent
> exam on 9/5/08, states there was no tenderness in her peripheral
> joints and she had good motion and strength</u>. Finally, he did not
> refer her to a neurologist for expert medical evaluation of her
> symptoms.

R. 26 (emphasis added). Thus, at step-two, the ALJ articulated three reasons for giving little

weight to Dr. Kohen's residual functional capacity assessment: 1) it was inconsistent with Dr.

Kohen's own medical records, including the failure to identify specific trigger points, and the

medical record as a whole; 2) it was unsupported by expert medical evidence; and 3) Dr. Kohen

did not refer Claimant to a neurologist. *Id*.

Later in the decision, the ALJ states that Dr. Kohen's examinations "have all been

unremarkable for symptoms that reflect fibromyalgia beyond muscle and joint "tenderness." R.

27. At step-four, the ALJ offers additional reasons for rejecting Dr. Kohen's fibromyalgia

diagnosis and resulting functional limitations, stating:

> he is employed by the Allergy, Asthma, Arthritis and Lung Center
> and is <u>not identified on letterhead or elsewhere as being a</u>

-12-

> neurologist or to otherwise be an expert regarding fibromyalgia.
> Thus, <u>he is not a specialist, nor did her [sic] refer the claimant to a
> specialist.</u> As is stated above with regard to his fibromyalgia
> residual functional capacity, he consistently failed in his
> examination reports to <u>specifically identify any of the 18 trigger
> points that are indicative of fibromyalgia. In fact, he identified
> nothing more than muscle and joint tenderness, which the claimant
> testified may well be associated with her lupus.</u>

R. 30 (emphasis added). Therefore, throughout the decision, the ALJ offers the following

reasons for rejecting Dr. Kohen's fibromyalgia diagnosis and his opinion regarding Claimant's

resulting functional limitations: 1) Dr. Kohen is not a medical specialist or a fibromyalgia expert,

and did not refer Claimant to such a specialist or expert; 2) the opinion is inconsistent with the

medical record as a whole; and 3) the opinion is inconsistent with Dr. Kohen's own records,

specifically his "most recent " treatment record on 9/5/08 showing no tenderness in her

peripheral joints; and his failure to specifically identify any of the eighteen trigger points

commonly associated with fibromyalgia. R. 24, 26-27, 30.[6]

## IV.    THE ISSUE

As set forth above, whether the ALJ had good cause to give "little weight" to Dr.

Kohen's opinion and to reject the diagnosis of fibromyalgia is the dispositive issue in this case.

Claimant asserts that Dr. Kohen is indeed a rheumatologist and, even if he was not a specialist,

there is no requirement that a treating doctor be a specialist. Doc. No. 16 at 9. Claimant contends

that Dr. Kohen was not required to list every trigger point and that Dr. Kohen expressly found

Claimant had "'many tender points.'" Doc. No. 16 at 9. Claimant contends that the "ALJ cannot

assume that the treating doctor did not rely on the correct tender points without violating his duty

---

[6] Regarding Claimant's diffuse muscle and joint tenderness, the ALJ himself ultimately opines that "on viewing the record as a whole, and considering there have been consistent reports of muscle and joint tenderness, it appears to the [ALJ] that her underlying lupus may be the cause of that tenderness." R. 30.

to develop a full and fair record." Doc. No. 16 at 10. Moreover, Claimant maintains that the record contains no medical opinion refuting the diagnosis of fibromyalgia. Doc. No. 16 at 9. Thus, Claimant contends that by rejecting the diagnosis of fibromyalgia, the ALJ arbitrarily substituted his own opinion for that of the medical professionals. Doc. No. 16 at 9-10 (internal citation omitted).

The Commissioner contends the ALJ had good cause to discount Dr. Kohen's opinion because it is inconsistent with Dr. Kohen's findings that Claimant was neurologically intact; Claimant's gait was intact; and that Claimant had a good range of motion. Doc. No. 20 at 6. The Commissioner also points out that in September 2008, Dr. Kohen found Claimant's joints were not tender, she had good range of motion and good strength. Doc. No. 20 at 6. The Commissioner asserts these findings "are not consistent with the extreme limitations found in his opinion." Doc. No. 20 at 6. The Commissioner contends that the ALJ properly noted that Dr. Kohen was not a specialist when rejecting his opinion and Dr. Kohen's failure to document the trigger points to support his fibromyalgia diagnosis renders it unsupported "by clinical and laboratory techniques, as required by the regulations." Doc. No. 20 at 8.[7] The Commissioner also argues that any error in rejecting Dr. Kohen's fibromyalgia diagnosis "is, at most, harmless because the ALJ found in [Claimant's] favor at step two." Doc. No. 20 at 8.

---

[7] The Commissioner also offers other reasons not articulated by the ALJ for rejecting Dr. Kohen's opinions and the diagnosis of fibromyalgia. Doc. No. 20 at 6-7. For example, the Commissioner maintains that the opinion is not consistent with Dr. Zwolinski's treatment note and Dr. Puestow's RFC assessment. Doc. No. 20 at 6- 7. The Eleventh Circuit has recently held that "a court may not accept appellate counsel's *post hoc* rationalizations for agency actions," and "[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." *Baker v. Commissioner of Social Security*, 2010 WL 2511385 at *3 (11th Cir. June 23, 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974) (emphasis in original)).

-14-

## V.    LEGAL STANDARDS

### A.    THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id.* (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.    STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

C.    **REMEDIES**

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal

analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *See Falcon v. Heckler*, 732 F.2d 827, 829-30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[8]

---

[8] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric

# VI.    ANALYSIS

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 F. App'x. 266, 269 (11th Cir. 2005).[9]  "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Id*.  Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone.  *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

While the opinion of a one-time examining physician may not be entitled to deference, especially when it contradicts the opinion of a treating physician, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (opinions of one-time examiners are not entitled to deference because they are not treating physicians).  The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining

---

report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

[9] In the Eleventh Circuit unpublished opinions are not binding precedent, but may be cited as persuasive authority. 11th Cir. R. 36-2.

physician. *Lamb*, 847 F.2d at 703.

As set forth above, throughout his decision, the ALJ offered the following reasons for giving "little weight" to Dr. Kohen's opinion and rejecting his diagnosis of fibromyalgia: 1) Dr. Kohen is not a medical specialist or a fibromyalgia expert, and did not refer Claimant to such a specialist or expert; 2) the opinion is inconsistent with the medical record as a whole; 3) the opinion is inconsistent with Dr. Kohen's own records, specifically his "most recent" treatment record on 9/5/08 showing no tenderness in her peripheral joints; and his failure to specifically identify any of the eighteen trigger points commonly associated with fibromyalgia. R. 24, 26-27, 30. After a brief discussion of the nature of fibromyalgia, the Court will address each of the reasons the ALJ identified as a basis for rejecting Dr. Kohen's fibromyalgia diagnosis and for giving his opinion about Claimant's ability to work little weight.

Fibromyalgia is a medical condition that is marked by a lack of objective medical evidence, often lacking "'medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms . . . .'" *Somogy v. Comm'r of Social Sec.*, 366 F. App'x 56, 63 (11th Cir. 2010) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). Thus, the lack of objective clinical findings to support a fibromyalgia diagnosis is insufficient, standing alone, "to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations." *Id.* at 64. The Eleventh Circuit has also cited *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003), for the proposition that there are no objective tests that can conclusively confirm a fibromyalgia diagnosis. *Id.* at 63-64.

Symptoms of fibromyalgia include chronic muscle pain, severe fatigue, pain upon palpation of tender points, insomnia, jaw pain/tenderness, numbness in the legs and feet,

dizziness and depression. *Id.* at 64. A person suffering from fibromyalgia also experiences "'long-term, body-wide pain and tender points in joints, muscles, tendons, and other soft tissues. Fibromyalgia has also been linked to fatigue, sleep problems, headaches, depression, anxiety, and other symptoms.'" *Varner v. Astrue*, 2011 WL 1196422 at *8 (M.D. Fla. Mar. 29, 2011) (quoting PUBMED HEALTH, http://www.ncb.nlm.nih.gov/pubmedhealth/PMH0001463/ (Mar. 24, 2011)). Further, "physical exams of fibromyalgia patients will usually yield normal results." *Jones v. Astrue*, 2010 WL 4116483 at *4 (M.D. Fla. Sept. 30, 2010).

1. Expert/Specialist.

The ALJ states that Dr. Kohen's opinions and diagnosis regarding fibromyalgia are insufficient because he is not a medical specialist or a fibromyalgia expert, and because he did not refer Claimant to such an expert. R. 26, 30. A rheumatologist is the appropriate specialist to diagnose fibromyalgia because fibromyalgia is a rheumatic disease. *See Presley v. Astrue*, 2009 WL 1543457 at *16 (N.D. Fla. June 1, 2009). In the case at bar, Dr. Puestow noted that claimant was "seen by Rheumatology 08/08 and 10/29/07." R. 381. The dates Dr. Puestow identifies as Claimant seeing Rheumatology correspond exactly with Dr. Kohen's treatment notes of the same date. *See* R. 355-56. The Court has carefully reviewed the entire record and finds no support for the ALJ's conclusion that Dr. Kohen lacks the appropriate credentials to diagnose fibromyalgia. Thus, the ALJ's statement that Dr. Kohen is not an "expert" in fibromyalgia is not supported by the record.

2. Inconsistent With Medical Records As A Whole.

The ALJ states, without elaboration, that Dr. Kohen's opinion is inconsistent with the medical record as a whole. R. 26. Conclusory statements by an ALJ to the effect that an opinion

is inconsistent with or not bolstered by the medical record as a whole are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion. *See Poplardo v. Astrue*, 2008 WL 68593, *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *see also Paltan v. Comm'r of Social Sec.*, 2008 WL 1848342, *5 (M.D. Fla. April 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required."). Otherwise, the Court would be left in a situation where it would have to impermissibly reweigh the evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (a reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."). In this case, the ALJ fails to articulate specific evidence in the medical record that is contrary to Dr. Kohen's opinion and diagnosis of fibromyalgia. Thus, the ALJ's statement that Dr. Kohen's findings are inconsistent with the medical record as a whole is not supported by substantial evidence.

3. Inconsistent With Dr. Kohen's Treatment Records.

The ALJ identifies two specific examples of how Dr. Kohen's opinion and diagnosis are inconsistent with his own treatment records: 1) Dr. Kohen's September 5, 2008 treatment note showing no diffuse joint and muscle tenderness; and 2) his failure to identify the specific trigger points. R. 26, 30. With the lone exception of the September 5, 2008 treatment note, Dr. Kohen repeatedly found diffuse joint and muscle tenderness and weakness at each of his treatment sessions. R. 320, 355, 395, 482. Contrary to the ALJ's statement, the September 5, 2008 treatment note was not Dr. Kohen's most recent examination. On May 11, 2009, Dr. Kohen's physical examination again revealed pain, fatigue, and diffusely tender joints and muscles with

many tender points.  R. 482.  Thus, the Court finds the ALJ's first reason is not an accurate representation of Dr. Kohen's treatment records and amounts to cherry picking.  *Gentile v. Astrue*, 2010 WL 1257478 at *5 (M.D. Fla. Mar. 29, 2010) ("[a]n ALJ cannot pick and choose from the evidence in order to support his conclusions.").

As to the second reason, Dr. Kohen repeatedly found many non-specific tender points.  R. 32, 355, 395, 482.  While there are cases which indicate that there are eighteen trigger points associated with fibromyalgia, there is no authority or record support for the proposition that a fibromyalgia diagnosis is invalid because the treating doctor failed to identify specific trigger points. *See Kendrick v. Astrue*, 2010 WL 883819 at *4 n.5 (M.D. Fla. Mar. 8, 2010) (there are eighteen trigger points associated with fibromyalgia).  In this case, Dr. Kohen repeatedly found that Claimant's "spine, joints, and muscles were diffusely tender with many tender points."  R. 355, 356, 395, 482. Dr. Kohen found that Claimant had pain and swelling in her arms, elbows, wrists, fingers, ankles, knees, and toes.  R. 355-56, 391, 395.  Dr. Kohen found that Claimant suffered morning stiffness for twenty to thirty minutes, which ranged from mild to "marked."  R. 355-56, 482.  Dr. Kohen also found that Claimant "sleeps poorly."  R. 355, 391, 395, 482.  In completing the Fibromyalgia Residual Functional Capacity Questionnaire, Dr. Kohen identified Claimant as having multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, frequent and severe headaches, TMJ, Raynaud's phenomenon, anxiety, panic attacks, depression, chronic fatigue syndrome and numbness and tingling.  R. 432.  Dr. Kohen further indicated that Claimant suffers bilateral pain in her shoulders, arms, hands/fingers, hips, legs, knees/ankles/feet, as well as her lumbosacral, cervical and thoracic spine.  R. 433.  Moreover, Dr. Kohen opined that positive ANA testing and low WBC supported

the diagnosis of fibromyalgia.

The medical record contains no medical opinion refuting Dr. Kohen's fibromyalgia diagnosis. "Uncontroverted medical testimony may not be arbitrarily rejected." *Gallun v. Bowen*, 638 F. Supp. 1272, 1276 (S.D. Fla. 1986) (citing *Goodley v. Harris*, 608 F.2d 234 (5th Cir. 1979)). Accordingly, the Court finds that the ALJ's decision to reject Dr. Kohen's diagnosis and opinions regarding Claimant's functional limitations therefrom because he did not identify specific trigger points is not supported by substantial evidence.

In his decision, the ALJ states that after "viewing the record as a whole, and considering there have been consistent reports of muscle and joint tenderness, it appears to the undersigned that her underlying lupus may be the cause of that tenderness." R. 30. This statement coupled with the insufficient reasons offered above to reject Claimant's diagnosis of fibromyalgia leads the Court to conclude that the ALJ impermissibly substituted his own medical opinion for that of Dr. Kohen. *Ramer v. Astrue*, 2009 WL 2905904 at *8 (M.D. Fla. Sept. 8, 2009). Accordingly, the Court finds that the ALJ did not have good cause to reject Dr. Kohen's fibromyalgia diagnosis and his related opinions.

The errors noted above materially impact steps-two, four, and five of the ALJ's five step sequential analysis and are not harmless. "Harmless errors are those that do not prejudice the [claimant]." *Duncan v. Astrue*, 2010 WL 3292806 at *7 (M.D. Fla. Aug. 19, 2010). An ALJ's failure to demonstrate good cause for rejecting a treating physician's opinion is reversible error and requires remand. *See Somogy*, 366 F. App'x at 65; *Jiles*, 2008 WL 2225780 at *6.

## VII.   REMEDIES

While Claimant requests a reversal for an award of benefits, based on this record, it is

recommended that the cumulative effect of the evidence does not establish disability without any doubt and Claimant has not demonstrated that Claimant has suffered an injustice. *See Davis*, 985 F.2d at 534 (award of benefits appropriate where evidence establishes disability beyond a doubt); *Walden*, 672 F.2d at 840 (award of benefits appropriate where Claimant has suffered an injustice).

**VIII.** <u>**CONCLUSION**</u>

For the reasons stated above, it is **RECOMMENDED** that:

1. The final decision of the Commissioner be **REVERSED** pursuant to sentence four of Section 405(g);

2. The case be **REMANDED** for further proceedings; and

3. The Clerk be directed to enter judgment in favor of Claimant and to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report **within ten (10) calendar days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on February 15, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard Culbertson, Esq.
Law Office of Richard A. Culbertson
3200 Corrine Drive
Suite E
Orlando, Florida 32803

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Charles R. Howard
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801